**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| MARVIN ALLEN MEAD,<br><br>Plaintiff,<br>vs.<br><br>CHARLES PALMER, BRAD WITTROCK, BRYCE RICHTER and ADAM RAPP,<br><br>Defendants. | No. C15-4055-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.   INTRODUCTION

This case is before me on defendants' motion (Doc. No. 14) for summary judgment. Plaintiff has filed a resistance (Doc. No. 16) and defendants have filed a reply (Doc. No. 17). No party has requested oral argument and, in any event, I find that oral argument is not necessary. *See* N.D. Ia. L.R. 7(c). The motion is ready for decision.

## II.   PROCEDURAL HISTORY

Plaintiff Marvin Mead filed a motion (Doc. No. 1) for leave to proceed *in forma pauperis* and a proposed *pro se* complaint on June 23, 2015. In the complaint, Mead alleged, among other things, a violation of his constitutional right to access the courts and his attorney. Senior United States District Judge Donald E. O'Brien, to whom this case was initially assigned, conducted an initial review (Doc. No. 3) and allowed Mead to file the complaint (Doc. No. 4). Judge O'Brien also appointed counsel for Mead and directed that appointed counsel file an amended complaint. Doc. No. 3 at 8-9. Mead filed the amended complaint (Doc. No. 9) on August 14, 2015. That complaint asserts constitutional violations arising from allegations that the defendants (a) improperly

confiscated legal material and (b) interfered with Mead's court cases. On August 26, 2015, defendants filed an answer (Doc. No. 10) denying Mead's claims. Defendants then filed their motion for summary judgment on January 22, 2016.

### III. RELEVANT FACTUAL BACKGROUND

Based on the parties' filings, and except as otherwise noted, the following facts appear to be undisputed for purposes of defendants' motion:

#### A. *The Parties*

Mead is a patient at the Civil Commitment Unit for Sexual Offenders (CCUSO), in Cherokee, IA, having been committed on October 6, 2011. Doc. No. 14-3 at 3. Charles Palmer is the Director of the Iowa Department of Human Services, which operates CCUSO. Doc. No. 10 at 1. The other defendants are employed at CCUSO in the following capacities: Brad Wittrock is the Deputy Superintendent, Bryce Richter is a Psychiatric Security Specialist and Adam Rapp is a Property Specialist. *Id*. at 1-2.

#### B. *Mead's Claims*

It is undisputed that Mead had a flash drive.[1] It is also undisputed that Mead kept legal materials, including attorney-client correspondence, on that flash drive. Mead's

---

[1] A flash drive is a small portable device that is used to store electronic data and to transfer data and files from one computer to another. According to the July 2014 version of the CCUSO Handbook, patients were allowed to have flash drives. However, "flash drives are for generally for [sic] treatment materials only and should comply with any memos posted . . . Flash drives may be periodically searched. . . If any information is found on the flash drive that is not related to treatment or otherwise in accordance with provision set forth in this handbook, the flash drive may be confiscated and placed in evidence. . . If inappropriate files are discovered on a patient's flash drive, the flash drive will be confiscated and will not be returned." Doc. No. 14-3 at 39.

claims arise out of an incident that occurred on April 20, 2015, when Richter, in the course of his duties at CCUSO, confiscated the flash drive from Mead's room. Richter did so because Mead, in response to an inquiry, acknowledged that the flash drive contained legal documents concerning other patients. Richter believed this to be a violation of CCUSO's rules.[2] On that same date, CCUSO issued Mead a behavior report (a write-up) for having improper information on his flash drive. Mead appealed, and, shortly thereafter, the behavior report was dismissed.[3] His flash drive was returned to him on either May 10, 2015, or May 19, 2015. *Compare* Doc. No. 14-3 at 5 (May 19) and Doc. No. 14-3 at 35 (May 10). However, on February 3, 2016, the Iowa District Court cited the behavior report, apparently unaware that it had been dismissed, when considering Mead's annual petition for review and release.[4] Doc. No. 16-5 at 25-27.

---

[2] The flash drive did, in fact, contain another patient's legal materials. Doc. No. 14-3 at 14, 36. However, there is no evidence that Mead had those materials for an illicit purpose. Rather, it appears to be uncontroverted that Mead had the materials because he was assisting others with their cases. As both parties agree, confined individuals generally have a right to help each other with their court cases. *Johnson v. Avery*, 393 U.S. 483, 497 (1969).

[3] Mead states he was told the report was dismissed because it was not clear that he was aware of the rule about having someone else's legal documents on a flash drive. Doc. No. 14-3 at 35.

[4] The court wrote: "The State's report indicates [Mead] received a major incident report a few months before it completed its report. [Mead's expert] claims that major incident report was rescinded, but that is nowhere in the record." Doc. No. 16-5 at 26-27. Thus, it appears that the state court received a truncated behavioral report record that contained no evidence of the report's dismissal. *See also* Doc. No. 16-5 at 14 (CCUSO's expert report to the state court, written well after Mead won his appeal of the behavioral report, which makes no reference to the appeal). The same selective inclusion of evidence occurred here. Defendants' summary judgment appendix contains the behavior report but no documentation of its subsequent dismissal. *Compare* Doc. No. 14-3 at 38 (behavior report in defendants' appendix) with Doc. No. 16-5 at 9 (grievance response form in Mead's appendix stating that the report would be dismissed). In this case, the defendants at least acknowledge in their filings that the report was dismissed. *See* Doc. No. 14-1 at 1. However, CCUSO's repeated failure to provide courts with the entire record is troubling.

During the time Mead was without his flash drive, he had a case pending before the Eighth Circuit Court of Appeals. However, the case already had been submitted to the appellate panel and was awaiting ruling. Doc. No. 14-3 at 43-44; *see also* C13-4017-MWB, Doc. No. 40, 47. In addition, as noted above, Mead's annual review was pending in the Iowa District Court. Mead filed a response in that action without the benefit of his flash drive on May 11, 2015. Doc. No. 14-3 at 69.[5] In addition, Mead is an interested party in another case pending in this court (No. C12-4086-MWB). However, nothing that required Mead's participation in that case occurred during the relevant time period. *Id*.

During his deposition testimony in this case, Mead generally agreed that some CCUSO patients have a history of hiding counter-therapeutic materials on their flash drives. Mead also agreed that there may be legitimate reasons for CCUSO staff to search the non-legal materials contained on a patient's flash drive.

Rapp has submitted a declaration stating that he received and reviewed Mead's flash drive on April 21, 2015. Rapp further states that he identified legal documents pertaining to other CCUSO patients by looking at the file names and did not review any of Mead's personal legal documents. He states: "I am trained to review written materials. Generally, I look quickly at the header on the first page and the signature on the last page. Most legal material is easily identifiable in this manner. I know not to read legal correspondence and I did not read legal correspondence in this case." Doc. No. 14-3 at 36-37.

Wittrock's only direct involvement in this case was dismissing Mead's behavioral report. There are no specific allegations relating to Palmer, other than that he had a supervisory role over CCUSO.

---

[5] It appears from the record that Mead was represented by counsel in the state court action at the time. However, that counsel was subsequently removed from the case. Mead contends he was *pro se* at the time.

## IV.    SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings

and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## *V.     ANALYSIS*

Defendants argue: (a) they did not deny Mead access to the courts; (b) they did not tamper with or invade the privacy of Mead's legal papers; and (c) they are entitled to qualified immunity and Eleventh Amendment immunity.

### *A.     Access to the Courts*

#### *1.     Applicable Standards*

The Eighth Circuit has explained:

The Constitution guarantees prisoners a right to access the courts. *See Murray v. Giarratano*, 492 U.S. 1, 11 n. 6, 109 S. Ct. 2765, 106 L. Ed.2d 1 (1989) ("The prisoner's right of access has been described as a

consequence of the right to due process of law and as an aspect of equal protection." (internal citations omitted)); *see also Christopher v. Harbury*, 536 U.S. 403, 415 n. 12, 122 S. Ct. 2179, 153 L. Ed.2d 413 (2002) (noting, outside of the context of prisons, the right to access the courts is guaranteed by an amalgam of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses). For prisoners, meaningful access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."

*White v. Kautzky*, 494 F.3d 677, 679–80 (8th Cir. 2007).[6]

"To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (citations omitted). "To prove actual injury, [a prisoner] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Id*. (quoting *Lewis v. Casey*, 518 U.S. 343, 353, 116 S. Ct. 2174, 135 L. Ed.2d 606 (1996)).

*Hartsfield v. Nichols*, 511 F.3d 826, 831–32 (8th Cir. 2008).

### 2. Analysis

Defendants argue that Mead has failed to allege, much less prove, an actual injury arising from the alleged denial of his access to the courts. In response, Mead states:

---

[6] Mead is a civilly-committed patient, not a prisoner. However, as this court has previously observed, the Eighth Circuit often uses prisoner standards when evaluating 42 U.S.C. § 1983 cases filed by civilly-committed individuals. *See Willis v. Palmer*, C12-4086-MWB, 2016 WL 1267766, at *22 (N.D. Iowa Mar. 30, 2016). Unsurprisingly then, the Eighth Circuit appears to have adopted the prisoner standard for civilly-committed patients for "access to the courts" claims. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012) (discussing the prisoner standard for access to the court in affirming a case arising out of Minnesota's civil commitment program for sexual offenders).

> Defendants argue a "brief confiscation" of Mr. Mead's flash drive caused him no harm and that the behavior report filed against him was "ultimately dismissed." Arguably, this might have proven true if the Defendants had ensured that the report was dismissed as stated. Instead, the invalid Behavior Report was left to color Mr. Mead's Annual Report and subsequent Ruling on his request for discharge from confinement. The Defendants failed to correct the record for Mr. Mead's Annual Report and this formed part of the basis for denial of a hearing in the state court action. It is clear that the behavior report harmed Mr. Mead's position in that matter. His effort to obtain a hearing in state court was legally compromised by the filing of the behavior report and its inclusion in his Annual Report as evidenced by the Ruling on Motion for Annual Review. He has suffered an actual injury.

Doc. No. 16-3 at 5. It may be entirely true that Mead suffered injury because CCUSO did not advise the Iowa District Court that the behavioral report regarding the flash drive had been dismissed. However, that does not constitute a constitutional "denial of access to the courts" claim. It might form the basis of some other kind of claim against CCUSO and/or its counsel, such as a claim (in the state court) for sanctions or other relief on grounds that CCUSO misled the court about the status of the behavior report. If I was the state court judge, I would be very interested in exploring this apparent lack of candor on CCUSO's part. However, even if CCUSO's conduct in the Iowa District Court was exactly as bad as it looks, it has nothing to do with Mead's "denial of access" claim in this case.

In this case, Mead has failed to allege any facts to support his claim he was denied access to the courts. First, there is no indication in the record that Mead sought to file a new complaint during the time period where he did not have access to his flash drive. Nor is there evidence that Mead missed a filing deadline because he did not have access to his documents. Indeed, Mead has failed to explain how his temporary inability to retrieve any particular document on the flash drive impacted any of his cases or claims in any specific way. In fact, as noted above, Mead was able to file a pro se response in

his annual review case despite not having his flash drive.[7] Mead has not only failed to prove an injury from any denial of access to the courts, he has failed to allege an actual instance of being denied such access. Accordingly, his claim fails as a matter of law.

## B. *Legal Mail*

### 1. *Applicable Standards*

The constitutional right to legal papers and to be free from interference with legal mail are closely related to the access to courts. *Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997) ("The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts."). In addition, "[p]rivileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981). This is because:

> *Wolff v. McDonnell*, 418 U.S. 539, 575–77, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974). . . [stands] for the proposition that mail from an attorney to an inmate client cannot be opened for inspection outside the inmate's presence. . . *See also Powells v. Minnehaha County Sheriff Dep't*, 198 F.3d 711, 712 (8th Cir. 1999) (allegation that prison officials opened legal mail outside of inmate's presence is sufficient to state a constitutional claim); *Thongvanh v. Thalacker*, 17 F.3d 256, 258–59 (8th Cir. 1994) (prison officials' duty to maintain security within prison does not extend to reading inmates' legal mail).

*Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2001). Additionally:

> The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts. The taking of legal papers will often (though perhaps not always) interfere with an inmate's right of access to the courts. We will not deny relief on the unsupported assumption that

---

[7] Similarly, Mead has failed to allege that the quality of his pro se filing was diminished because he did not have his flash drive. Rather, his sole complaint is that his response was somewhat delayed because he did not have his flash drive. *See* Doc. No. 14-3 at 6. He has failed to allege that the delay prejudiced him.

9

the papers involve only frivolous claims. Therefore, the destruction or withholding of inmates' legal papers burdens a constitutional right, and can only be justified if it is reasonably related to a legitimate penological interest.

*Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997).[8]

### 2. Analysis

The defendants argue:

> Not everything that is legal is also confidential. *Harrod v. Halford*, 773 F.2d 234, 235 (8th Cir. 1985). . . Mr. Mead admitted in his deposition testimony that patients hide things on flash drives and there was a proper purpose for searching the flash drive. Mr. Mead does not know whether Mr. Rapp read his legal correspondence or not. Mr. Rapp attests that he did not. He confirms that he searched for the legal work of the other patient and it was easily identifiable by file name. Confirming it was there completed his investigation. CCUSO later rescinded the behavior report because there was no rule specifically against having another patient's legal work on one's flash drive. *See, e.g., Bear v. Kautzky*, 305 F.3d 802, 803 (8th Cir. 2002) (permitting communication with "jailhouse lawyers").

Doc. No. 14-2 at 4. Mead argues that Rapp may have read his legal material and that any legal correspondence should have been opened in Mead's presence.

However, Mead must identify specific facts showing that there is a genuine issue for trial. *Mosley*, 415 F.3d at 910. Mead concedes that the defendants have a legitimate

---

[8] The reference to a legitimate penological interest implicates the *Turner* test. *Beaulieu*, 690 F.3d at 1039. That test asks (1) whether there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a "ripple effect" on fellow inmates and prison officials; and (4) whether a ready alternative is available. *Id*. Because the term "penological interest" does not directly apply to civilly-committed patients, I apply the modified *Turner* test utilized by Judge Mark W. Bennett, substituting "therapeutic interests as well as relevant safety and security concerns" in place of "penological interests." *Scott v. Benson*, 151 F. Supp. 3d 931, 945 n. 14 (N.D. Iowa 2015) (quoting *Karsjens v. Jesson*, 6 F. Supp. 3d 916, 937 (D. Minn. 2014)).

penological interest in ensuring that patients do not use their flash drives for counter-therapeutic purposes. This is similar to the well-founded right prison administrators have to search non-privileged mail. *Jensen*, 648 F.2d at 1182. Thus, the first question is whether there is a legitimate fact issue about whether the flash drive contained privileged materials. There is no such dispute. Mead has not identified any specific legal communications that were contained on the flash drive. While he need not divulge privileged communications, to substantiate this claim he would have to point to some facts supporting his contention that the confiscated flash drive actually contained legal mail (*e.g.*, "email from Ms. Wingert dated xx/xx/xxxx"). Mead has not even alleged a particular or approximate number of allegedly-protected communications.

Moreover, the record contains no evidence that the defendants actually viewed any privileged materials. No witness claims to have observed any of the defendants viewing legal correspondence and the defendants have provided a declaration in which Rapp states that he reviewed document titles but did not read any legal correspondence. Mead simply asserts – without supporting evidence – that because the defendants had the flash drive in their possession, they read privileged mail. However, prison officials routinely have possession of an inmate's legal mail before it is delivered, during inspections or transfers. Possession alone does raise an inference that the defendants acted improperly. Absent some evidence establishing that the flash drive contained legal communications, and that the defendants actually viewed those communications outside Mead's presence, his claim fails as a matter of law.

## C.   *Immunity*

Finally, the defendants raise issues of qualified immunity, Eleventh Amendment immunity and personal liability. Because Mead's claims fail on the merits, I need not address these alternative arguments.

## *VI.  CONCLUSION*

For the reasons set forth herein, defendants' motion (Doc. No. 14) for summary judgment is **granted** with regard to all claims.  This action is hereby **dismissed with prejudice**.  Judgment shall enter against the plaintiff.

**IT IS SO ORDERED.**

**DATED** this 13th day of September, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE